UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MELISSA WILLIAMS,<br><br>            Plaintiff,<br>v.<br><br>NANCY A. BERRYHILL,<br><br>            Defendant. | CASE NO. C16-1704JLR<br><br>ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS |

## I. INTRODUCTION

Plaintiff Melissa Williams seeks review of the denial of her applications for disability insurance and supplemental security income ("SSI") benefits. Ms. Williams contends that the Administrative Law Judge ("ALJ") erred in evaluating Ms. Williams's testimony and the medical evidence in the record. (Op. Br. (Dkt. # 11) at 1.) Having considered the submissions of the parties, the relevant portions of the record, and the applicable law, the court AFFIRMS Defendant Commissioner Nancy A. Berryhill's ("the Commissioner") final decision and DISMISSES the case with prejudice.

## II. BACKGROUND

On January 25, 2013, Ms. Williams filed applications for disability insurance and SSI benefits. (Administrative Record ("AR") (Dkt. # 7) at 10.) Ms. Williams's applications were denied initially and on reconsideration. (*Id.*) After the ALJ conducted a hearing on April 22, 2015, the ALJ issued a decision finding Ms. Williams not disabled. (*Id.* at 10-24.)

In his decision, the ALJ utilized the five-step disability evaluation process,[1] and the court summarizes the ALJ's findings as follows:

> **Step one**: Ms. Williams has not engaged in substantial gainful activity since July 27, 2012, the alleged onset date.
>
> **Step two**: Ms. Williams has the following severe impairments: obesity, osteoarthritis and allied disorders, and affective disorders.
>
> **Step three**: Ms. Williams does not have an impairment or combination of impairments that meets or equals the requirements of a listed impairment.[2]
>
> **RFC**: Ms. Williams has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except that she can lift and/or carry 10 pounds occasionally and frequently; stand and/or walk with normal breaks for a total of about two hours in an eight-hour workday; sit with normal breaks for a total of about six hours in an eight-hour workday; occasionally push or pull with the left lower and upper extremities; frequently balance, crouch, and crawl; occasionally stoop; occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds; frequently reach with the left upper extremity; avoid concentrated exposure to hazards such as dangerous machinery and protected heights, as well as fumes, odors, dusts, gases, poor ventilation. She is capable of unskilled work tasks consisting of simple, routine tasks with customary breaks and lunch. She should have no contact with the public but can have occasional contact with coworkers. She should have no more than occasional changes in the work environment and no strict production quotas.

---

[1] 20 C.F.R. § 416.920.

[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.

**Step four**: Ms. Williams is unable to perform any past relevant work.

**Step five**: Because jobs exist in significant numbers in the national economy that Ms. Williams can perform, she is not disabled.

(*See id.* at 10-24.) The Appeals Council denied Ms. Williams's request for review, making the ALJ's decision the Commissioner's final decision.[3] (*See id.* at 1-6.)

### III. ANALYSIS

Pursuant to 42 U.S.C. § 405(g), the court must set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

**A.    Evaluation of Ms. Williams's Testimony**

Ms. Williams argues that the ALJ erred in evaluating her subjective complaints. (*See* Op. Br. at 3-15.) The court disagrees.

Questions of credibility are solely the responsibility of the ALJ. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The court may not second-guess these credibility determinations. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (internal citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918

---

[3] The court omits the rest of the procedural history in this matter because it is not relevant to the outcome.

(9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834.

Ms. Williams testified that she had chronic headaches that affected her vision and often became so severe that she could not function at all and had to lie down in a dark, quiet room for several hours. (*See* AR at 40-45.) The ALJ discounted Ms. Williams's statements concerning the intensity and limiting effects of these headaches because, among other reasons, Ms. Williams responded favorably to treatment. (*See id*. at 18.) An ALJ may discount a claimant's testimony on the basis of medical improvement and favorable response to treatment. *See Morgan v. Comm'r, Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (stating that a favorable response to treatment "undermines [a claimant's] reports regarding the disabling nature" of an impairment). Here, Ms. Williams improved when regularly taking gabapentin and stated that she was "able to function" even while on a low dose. (*See* AR at 536, 538.) Her treatment provider later increased her dose of gabapentin and also prescribed imitrex. (*See id*. at 723.) In March of 2015, one month before her hearing, Ms. Williams reported to her provider that imitrex "work[ed] very well for her." (*See id*. at 725.) Based on Ms. Williams's reports to her providers, the ALJ had substantial evidence to find that her headaches were not as severely limiting as she stated at the hearing.

Ms. Williams also testified that she could not lift her left arm above her head or move it in a circular motion due to calcifications in the shoulder joint. (*See* AR at 42.)

The ALJ discounted this testimony because Ms. Williams failed to seek consistent treatment, which the ALJ took to indicate that her symptoms were less severe than she attested to at the hearing. (*See id.* at 17.) A claimant's statements "may be less credible if the level or frequency of treatment is inconsistent with the level of complaints." Social Security Ruling 96-7p, 1996 WL 374186, at *7. Here, Ms. Williams presented to a medical provider with shoulder complaints in March 2014, stating that she could no longer perform her regular physical therapy due to worsening pain. (*See* AR at 621.) The provider recommended ice and heat, with further physical therapy if medical imaging came back negative. (*See id.*) After imaging revealed no rotator cuff tear, the record does not indicate that Ms. Williams sought any further treatment. (*See id.* at 618.) Therefore, substantial evidence supports the ALJ discounting Ms. Williams's testimony due to lack of treatment.

Finally, Ms. Williams testified that she suffered from anxiety and depression with impaired concentration and specifically stated that she often could not remember what happened within the last five minutes. (*See id.* at 44-45.) The ALJ discounted these statements because, among other reasons, they were inconsistent with clinical observations in the record. (*See id.* at 19.) A determination that a claimant's complaints are inconsistent with clinical observations can satisfy the clear and convincing requirement. *See Regennitter v. Comm'r, Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). Here, mental health professionals observed that Ms. Williams had intact concentration and largely normal memory on clinical testing. (*See* AR at 433-35, 550.)

//

Therefore, substantial evidence supports the ALJ's reason for discounting Ms. Williams's testimony regarding the severity of her mental health impairments.

**B.  Evaluation of the Medical Evidence**

Ms. Williams also argues that the ALJ erred in evaluating the medical evidence in the record. (*See* Op. Br. at 15-18.) Where the medical evidence in the record is not conclusive, resolving questions of credibility and conflicts in the evidence is solely the responsibility of the ALJ. *See Sample*, 694 F.2d at 642. In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ can satisfy this requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ may also draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester*, 81 F.3d at 830. Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31.

//

//

1. Bashyam S. Iyengar, M.D.

Ms. Williams argues that the ALJ erred by failing to give a specific and legitimate reason supported by substantial evidence to discount the opinion of treating physician Bashyam S. Iyengar, M.D. (*See* Op. Br. at 15-16.) The court disagrees.

In December of 2012, Dr. Iyengar completed a medical opinion questionnaire, in which he opined that Ms. Williams could perform sedentary work but for no more than 10 hours a week. (*See* AR at 412-13.) The ALJ agreed that Ms. Williams could only perform sedentary work but disregarded Dr. Iyengar's opinion that Ms. Williams could work no more than 10 hours a week because, among other reasons, Dr. Iyengar did not correlate any clinical findings to that determination. (*See id.* at 20.) An ALJ need not accept the opinion of a treating physician if that opinion is inadequately supported by clinical findings. *See Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Furthermore, an ALJ "may 'permissibly reject . . . check-off reports that [do] not contain any explanation of the bases of their conclusions.'" *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996)). Here, Dr. Iyengar checked a box on the questionnaire indicating that Ms. Williams could work no more than 10 hours but did not correlate any clinical exam findings to that conclusion. (*See* AR at 412-14.) Although Dr. Iyengar noted that Ms. Williams had several workplace limitations, he did not provide any basis for the opinion that Ms. Williams could not work a full week with those limitations. (*See id.* at 412.) Therefore, substantial evidence supports the ALJ giving that opinion minimal weight because it was unsupported by clinical findings.

2. <u>Virginia Baum, LMHC</u>

Ms. Williams argues that the ALJ erred by failing to give a germane reason supported by substantial evidence to discount the opinion of mental health counselor Virginia Baum, LMHC. (*See* Op. Br. at 17.) The court disagrees.

Mental health counselors are "other sources," and their opinions may be given less weight that those of "acceptable medical sources." *See Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). The ALJ may discount the testimony of such "other sources" if the ALJ "gives reasons germane to each [source] for doing so." *Molina*, 674 F.3d at 1111 (citations omitted).

Here, Ms. Baum completed a medical questionnaire in April 2013 in which she opined that Ms. Williams was totally unable to participate in work activity. (*See* AR at 421-23.) The ALJ gave Ms. Baum's opinion minimal weight because, among other reasons, Ms. Baum based her opinion on Ms. Williams's self-reports rather than any objective testing or clinical observations. (*See id*. at 21.) An ALJ may reject a medical opinion if it is based "to a large extent" on a claimant's self-reports that have been properly discounted as incredible. *See Tommasetti*, 533 F.3d at 1041. Here, because Ms. Baum's completion of the questionnaire predates all of her treatment notes, Ms. Baum's opinion appears to be based entirely on Ms. Williams's statements and testing entirely within Ms. Williams's control. (*See* AR at 421-27, 544-62.) As discussed above, the ALJ properly found Ms. Williams's testimony to be not credible. *See supra* § III.A. Notably, other physicians suspected Ms. Williams of malingering, and Ms. Baum later stated in treatment notes that Ms. Williams made "incongruent statements" about her

symptoms. (*See id*. at 433, 436, 562.) Therefore, the ALJ provided a germane reason supported by substantial evidence to discount Ms. Baum's opinion.

3. <u>State Agency Medical Consultants</u>

Ms. Williams argues that the ALJ erred by failing to provide a specific and legitimate reason supported by substantial evidence for discounting the opinions of the state agency medical consultants in the record. (*See* Op. Br. at 18.) The court disagrees.

The ALJ gave significant weight to the opinions of the state agency medical consultants regarding Ms. Williams's mental capacity but noted that "[w]hile they recommended no cooperative work with coworkers, I have limited the claimant to no more than occasional contact with coworkers, as this appears more consistent with the longitudinal record." (*See* AR at 20.) The state agency medical consultants in fact stated that Ms. Williams would "do best" with "limited cooperative interaction" with coworkers. (*See id*. at 80, 112, 129.) Therefore, despite the ALJ's mischaracterization of the consultants' opinions, Ms. Williams shows no harmful error because the consultants' opinions are not inconsistent with the RFC limiting Ms. Williams to only occasional contact with coworkers. (*See id*. at 15.)

## IV. CONCLUSION

For the foregoing reasons, the court AFFIRMS the Commissioner's final decision and DISMISSES this case with prejudice.

Dated this 18th day of May, 2017.

JAMES L. ROBART
United States District Judge

ORDER - 9